230 F.2d 64
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ELCHLEAY CORPORATION and International Brotherhood of
Boilermakers, Iron Ship Builders, Blacksmiths,
Forgers & Helpers, AFL, Respondents.
 No. 12571.
 United States Court of Appeals Sixth Circuit.
 Feb. 14, 1956.
 
 Robert G. Johnson, Washington, D.C. (Theophil C. Kammholz, David P. Findling, Marcel Mallet-Prevost, Frederick U. Reel, Nancy M. Sherman, Washington, D.C., on the brief), for petitioner.
 Sherman T. Rock, Pittsburgh, Pa. (Theodore M. Burns, Jr., Paul, Lawrence & Rock, Pittsburgh, Pa., on the brief), for Eichleay Corp.
 Clif Langsdale, Kansas City, Mo., for International Brotherhood.
 Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.
 McALLISTER, Circuit Judge.
 
 
 1
 The National Labor Relations Board filed its petition to enforce its order against respondents requiring them to cease and desist from maintaining, giving effect to, or renewing a closed shop provision in a collective bargaining agreement, in violation of the Taft-Hartley Act,[1] and to post customary notices stating that they would not carry out such provision.
 
 
 2
 The charge of an unfair labor practice and the complaint based thereon were filed on the ground that respondents had refused to employ a certain individual for the reason that he had not obtained consent and clearance from respondent unions. On the hearing, the proofs did not sustain this charge and the Trial Examiner, in his intermediate report, found that the evidence did not sustain the allegations of the complaint. Such finding was sustained by the Board. However, the General Counsel of the Board also contended that respondents were guilty of an unfair labor practice because of the existence of a contract between respondent unions and the employer providing for a closed shop, in violation of the Taft-Hartley Act. The Trial Examiner held that this was not an issue, as the complaint filed against respondents by the General Counsel was not based on this contract, and the allegations of the complaint did not allege that the execution of the contract was an unfair labor practice. The Board, however, held that because the complaint alleged that respondents violated the Act by enforcing the contract according to its terms, the legality of the contract was necessarily in issue. The contract provision itself was not relied upon as an unfair labor practice in the complaint, and there was no proof that respondents had enforced the contract according to its terms. In fact, the proof is entirely to the contrary; but this consideration is of no importance, in view of our conclusions.
 
 
 3
 The contract between the international union and respondent employer, who conducted a nationwide business, was entered into on April 28, 1952. In November, 1953, when the incident leading to the filing of the charge in this case occurred, none of the officials of the district union or of the local had any knowledge that a contract with such a closed shop provision was in existence. Moreover, none of the officials of the respondent employer who were in control of the project in question, and in charge of the hiring of employees, knew of the existence of such a contract. The contract had been, apparently, reposing in the files of the international union at its headquarters in Kansas City, and of respondent employer at its headquarters in Pittsburgh. At the time the charge was filed in this case, a closed shop provision was illegal under the Taft-Hartley Act, and everyone concerned knew that such requirement would be illegal. The inclusion of the provision in the contract is implicitly justified by the international union and the employing company on the ground that, at the time of its execution, it was not clearly understood whether the provision was illegal or not, and, consequently, the agreement set forth, with reference to the closed shop provision, that 'all of the foregoing shall be subject to the provisions of any and all existing laws.' See, in this regard, National Labor Relations Board v. Gaynor News Co., 2 Cir., 197 F.2d 719, affirmed Radio Officers Union etc., v. N.L.R.B., 347 U.S. 17, 47 S.Ct. 323, 98 L.Ed. 455; and Red Star Express Lines v. National Labor Relations Board, 2 Cir., 196 F.2d 78. No one who had anything to do with the hiring of employees on the part of the union or on the part of the employer was aware of the existence of the contract in question. They knew that a closed shop provision not only violated federal law but also the law of Tennessee, and at no time was union membership ever considered or mentioned as a condition of employment by either the union or the company.
 
 
 4
 In fact, the record is clear that the union officials, when asked by job applicants for a referral by them to respondent employer, stated that they never gave such referrals because is was against the law.
 
 
 5
 The mere existence of a closed shop agreement executed in prior years, unknown to any of the officials of the unions or employers in charge of employment, cannot be held to be an unfair labor practice when, as in this case, all of the conduct of both employer and union has been, with strictest circumspection, entirely in accordance with the law.
 
 
 6
 The petition of the National Labor Relations Board for enforcement of its order, requiring respondents to post notices, is denied.
 
 
 
 [1]
 Title 29 U.S.C.A. § 151 et seq